UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAY CASHMAN, INC., <br><br> Plaintiff <br><br> v. <br><br> PORTLAND PIPE LINE CORP., <br><br> Defendant | CIVIL ACTION <br> Docket No: 2:07-cv-00093-DBH |

**DEFENDANT PORTLAND PIPE LINE CORPORATION'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OWNERSHIP OF PORTLAND PIPE LINE CORPORATION**

Defendant Portland Pipe Line Corporation ("Defendant" or "PPLC" or "the Pipeline") hereby moves to exclude evidence of the ownership structure of the Portland Pipe Line Corporation as irrelevant and unduly prejudicial. As described below, the owners of PPLC (and the shareholders of those owners) had no involvement with the contract at the heart of this litigation. These owners were not involved in the drafting of the contract, the administration of the contract, or the response to Cashman's claims. Allowing a jury to hear evidence of PPLC's owners would not tend to make *any* fact of consequence more or less likely to be true and would unfairly prejudice the jury against PPLC.

### FACTUAL SUMMARY

1. <u>Ownership Structure of Portland Pipe Line Corporation</u>

Portland Pipe Line Corporation is a wholly owned subsidiary of Montreal Pipe Line Limited. *See* Deposition of M. Dawson, 5:1-3, attached as Exhibit A. Montreal Pipe Line Limited is owned by three companies – Imperial Oil, Shell Canada, and Petro-Canada. *See* Deposition of M. Dawson, 9:25 – 10:9, attached as Exhibit A. Imperial Oil owns a majority of

{W1030579.7}
1

Montreal Pipe Line Limited – holding a 57% ownership stake. *See* Deposition of M. Dawson, 8:15-23, attached as Exhibit A. Imperial Oil is a publicly traded company, with shares listed on the American Stock Exchange. ExxonMobil is the majority shareholder of Imperial Oil. *See* Deposition of M. Dawson, 8:25 – 9:24, attached as Exhibit A.

2. Portland Harbor Channel Dredging Contract

After soliciting bids from various dredging companies, PPLC notified Jay Cashman, Inc. in August 2004 that it was the low bidder for the channel deepening project. *See* JCI 277, attached Exhibit B. As of October 13, 2004, PPLC and Cashman had executed a contract for the dredging work, which after completion would leave the channel at -48 feet MLLW generally and -49 feet MLLW in bedrock and till areas.[1]

3. Contract Performance and Cashman's Damages Claims

The evidence will show that, under the relevant state permit, dredging in the approach channel was permissible only between January 1, 2005 and March 31, 2005 – a 90 day job, for environmental reasons. Even after a permit extension through April 15, 2005, Cashman did not finish its work as scheduled in 2005. The evidence will show that Cashman returned to Portland in 2006 to work another full dredging season, from early January through late March 2006.

Following the completion of the contract work in 2006 and after making various vague and undocumented claims for extra work to PPLC, Cashman submitted a detailed claim letter on April 20, 2006 to PPLC as required by the contract. After the commencement of litigation, Cashman, through its expert designation, presented new claims for damages alleging that the project was substantially complete in 2005 and that Cashman is owed all of its costs for the 2006 dredging season.

---

[1] Depth measurements for the contract were to be made from the bronze disk on PPLC's Pier No. 2 identified in the contract documents.

{W1030579.7}

  4. <u>No Involvement of PPLC's Owners with the Contract or Cashman's Claims</u>

Montreal Pipe Line Limited and its owners (Imperial Oil, Shell Canada, and Petro-Canada) had no direct involvement with the preparation, execution, or administration of the contract signed by PPLC and Cashman. The same is true for Imperial's shareholders, including ExxonMobil. The contract was prepared by PPLC and its consultants and negotiated and administered by PPLC's employees directly with Cashman's representatives. *See* Deposition of Stan Given, 8:21-10:13, attached as Exhibit C; Deposition of Ken Brown, Sept. 27, 2007, 4:1-22, attached as Exhibit D. The only discussion of the ownership structure of PPLC occurred during the deposition of Marjorie Dawson, the president of PPLC and its parent company, Montreal Pipe Line Limited. *See* Dawson Deposition, Exhibit A. The relationship between PPLC on the one hand, and its remote corporate relatives on the other hand, is of no relevance to this action.

## ARGUMENT

**I. Evidence of ownership of PPLC is not relevant to any of the claims alleged in Cashman's complaint, and thus should be excluded.**

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible, subject to certain exceptions, but "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Though relevance generally "presents a rather low barrier to admissibility", *Iacobucci v. Boulter*, 193 F.3d 14, 20 (1st Cir. 1999), courts exclude evidence for lack of relevance when the proffered evidence has no probative value regarding the issues in the case. *See Portland Nat. Gas Transmission Sys. v. 4.83 Acres More or Less*, No. 99-2330, 2000 WL 1425761, at *3-4 (1st Cir. Sept. 20, 2000) (upholding the exclusion of evidence of certain classifications of area around a pipeline and a map of that area as

{W1030579.7}

3

irrelevant in a takings case, where no connection existed between loss of land value pursuant to the taking and the proffered evidence).

Evidence of corporate ownership may be considered relevant to issues of personal jurisdiction, under certain circumstances, *see Tech. Capital, LLC v. Qualtech Networks, Inc.*, No. 06-51-P-H, 2007 WL 609918 at *6 (D. Me. Feb 15, 2007), punitive damages, *see Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 129-30 (D. Me. 2007), or where necessary to "pierce the corporate veil" in claims of fraud or inappropriate control of the subsidiary, *see Mathias v. Accor Economy Lodging, Inc.*, No. 01C6329, 2002 WL 1611582, at *1 (N.D. Ill. July 22, 2002). None of these claims are made by Cashman in this litigation.

Cashman's complaint contains five claims – breach of contract, quantum meruit, unjust enrichment, misrepresentation, and unconscionability and breach of the covenant of good faith and fair dealing. (*See* Complaint at p. 5-8.) Thus, Cashman's claims focus solely on the performance, completion, and evaluation of the dredge contract. Cashman's damages claims arising out of its complaint all essentially boil down to claims for extra work based on either allegedly substandard contract documents or allegedly unfair performance criteria. None of Cashman's claims as described in its complaint or by its damages expert raise any of the issues for which ownership structure is relevant.

Evidence of the ownership structure of PPLC does not have any probative value with respect to any fact of consequence in the case and fails to meet the test for relevance under Federal Rule of Evidence 401. Therefore, evidence of PPLC's ownership should be excluded pursuant to Federal Rule of Evidence 402. *See Mathias*, 2002 WL 1611582, at *1 (excluding as irrelevant, in a tort case, evidence of the financial records of defendants' parent company where there was no claim for fraud or inappropriate control of the subsidiary on the part of the parent); *Saad v. Shimano Am. Corp.*, No. 98C1204, 2000 WL 1036253, at *25 (N.D. Ill. July 24, 2000)

{W1030579.7}

(excluding as irrelevant, in a products liability action brought against a California manufacturer, evidence that the California corporation was a subsidiary of a Japanese corporation).

## II. Even if evidence of ownership of PPLC is relevant, it should be excluded as unduly prejudicial under Federal Rule of Evidence 403.

Even if evidence of ownership of the Pipeline could be deemed relevant under Federal Rule of Evidence 401, the court should exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Under Rule 403, a court must balance the risk of prejudice "against the evidence's probative worth, and exclude the evidence only when (and if) the discerned risk substantially outweighs the anticipated value." *Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d. 71, 75 (1st Cir. 1999). Thus, courts have properly excluded "marginally relevant" evidence "of scant probative value" to plaintiff's claims pursuant to Rule 403 when the risk that such evidence would prejudice the jury was high. *See LaPlante v. Am. Honda Motor Co.*, 27 F.3d 731, 739 (1st Cir. 1994) (upholding the exclusion of evidence of a manufacturer's profits from sales of all-terrain vehicles in a failure to warn and negligence case brought against the manufacturer).

The relevance of evidence of PPLC's corporate ownership is nonexistent. However, assuming minimal relevance for argument's sake, the risk of unfair prejudice to PPLC upon admittance of such evidence is high. Every advocate loves the chance to cast his or her case as David against Goliath. ExxonMobil is one of the largest industrial corporations in the world. Imperial Oil, Shell Canada and Petro-Canada are multi-billion dollar businesses. Cashman is a New England contractor. The implication could easily be that these giants took advantage of a somewhat local business.

This case is Cashman versus Portland Pipe Line, not Cashman versus Portland Pipe Line,

{W1030579.7}

5

plus its rich upstream owners (two and three layers removed).  Evidence of the name of PPLC's parent (Montreal Pipe Line), and in turn the names of the owners of the parent of Portland Pipe Line (Imperial Oil, Shell Canada and Petro-Canada) has no relevance to the issues in this case. Insertion of those red flag names, in these days of high gas prices and never-ending threats of investigations of the oil companies, could only prejudice the jury against PPLC.  There is no need to mention any of these companies, or PPLC's ownership structure at all.  It should not be permitted.  Evidence of PPLC's corporate owners should be excluded pursuant to Federal Rule of Evidence 403.

## CONCLUSION

Evidence regarding ownership of the Portland Pipe Line Corporation should be excluded as irrelevant to this contract dispute.  In the event the court finds such evidence relevant to this dispute under Federal Rule of Evidence 401, the court should exclude evidence of ownership of PPLC as unfairly prejudicial to PPLC.


DATED:  May 23, 2008           /s/  Jotham D. Pierce, Jr.
                               Jotham D. Pierce, Jr.
                               Nikolas P. Kerest
                               Margaret G. Smith
                               PIERCE ATWOOD LLP
                               One Monument Square
                               Portland, ME  04101
                               (207) 791-1100
                               jpierce@pierceatwood.com
                               nkerest@pierceatwood.com

                               Attorneys for Portland Pipe Line Corporation

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 23, 2008, I filed the foregoing Motion in Limine via the ECF system such that it will be electronically served on counsel of record as follows:

Martha Gaythwaite, Esq.
mgaythwaite@fgwl-law.com

Dated: May 23, 2008

                /s/ Jotham D. Pierce, Jr.
                Jotham D. Pierce, Jr.
                Nikolas P. Kerest

                PIERCE ATWOOD LLP
                One Monument Square
                Portland, ME 04101
                (207) 791-1100
                jpierce@pierceatwood.com
                nkerest@pierceatwood.com

                Attorneys for Defendant
                Portland Pipe Line Corporation

Case 2:07-cv-00093-DBH Document 65 Filed 05/23/08 Page 7 of 7 PageID #: 1446